LOUIS W. WARNOCK and MAXINE T. WARNOCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Warnock v. Commissioner
Docket No. 3603-75.
United States Tax Court
T.C. Memo 1977-188; 1977 Tax Ct. Memo LEXIS 253; 36 T.C.M. (CCH) 774; T.C.M. (RIA) 770188; June 20, 1977, Filed James L. Edgar, for the petitioners. J. Michael Adcock, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax for the taxable years 1971 and 1972 in the respective amounts of $1,182.54 and $1,378.97. Petitioners concede the correctness of respondent's adjustment to a casualty loss claimed on their Federal *254 income tax return for the taxable year 1971; therefore, the following issues remain for our decision: 1. Whether certain expenses were incurred while away from home in pursuit of a trade or business within the meaning of section 162(a)(2); [1]
2. Whether amounts incurred for "telephone expenses" are properly deductible; and 3. Whether petitioners are entitled to an interest deduction for the taxable year 1972 in excess of that allowed for that year by the Commissioner. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners Louis W. and Maxine T. Warnock, husband and wife, who resided in Sapulpa, Oklahoma, at the time the petition was filed herein, timely filed joint Federal income tax returns for the taxable years 1971 and 1972 with the Internal Revenue Service Center, Austin, Texas, using the cash method of accounting. Mr. Louis Warnock (petitioner) is a journeyman pipefitter and a member of Local Union 351 at Muskogee, Oklahoma, and Local Union 454 located *255 at Hot Springs, Arkansas. Throughout the taxable years involved herein, Petitioner Maxine T. Warnock resided in Sapulpa, Oklahoma. After numerous inquiries petitioner was unable to find employment in the Sapulpa area and in January 1971 was referred by Local Union 351 to the Bechtel Power Corp. (Bechtel) to work on a nuclear power plant project under construction in Russellville, Arkansas. The distance from Sapulpa to Russellville, Arkansas is 225 miles; from Sapulpa to Hot Springs 286 miles and Hot Springs to Russellville 78 miles. From Sapulpa to Russellville through Hot Springs the distance is thus 364 miles. Petitioner was employed in Russellville by Bechtel on January 18, 1971. At that time it was estimated that the power plant would not be finally completed until sometime in 1975. Although Bechtel customarily confers with union officials with respect to estimated completion dates, at the time petitioner was referred to Bechtel by Local 351, no indication was made to him concerning the length of time in which members of petitioner's trade would be needed on the job site. Petitioner accepted employment and an employment notice was issued by Bechtel showing the date of *256 employment to be January 18, 1971. Petitioner found lodging during the work week in various motels and boarding houses in the Russellville area until April 30, 1971, when he purchased a used trailer home which was financed with the Westinghouse Credit Corporation over a period of 60 months at a deferred payment price of $3,925.20 and a total finance charge of $844.59. During the period from January 18, 1971 to April 30, 1971, petitioner estimated his expenses to be $10 per night for motel lodging and $6 for meals. After the purchase of the trailer home, petitioner estimated his expenses to be $4 per night for lodging; the figure included the monthly payment of the $61.42 on the trailer, trailer lot fee of $30 per month and utilities of approximately $23 per month. Petitioner estimated the average cost of meals for the taxable year 1971 subsequent to April 30, to be $6 per day. During 1971 petitioner returned to Sapulpa, Oklahoma on weekends to be with his family. He also spent the Thanksgiving holidays in Sapulpa including two work days. While in Sapulpa petitioner contacted his local union in an attempt to find work closer to home. However, he was continuously unable *257 to find employment in the Tulsa or Muskogee, Oklahoma area, the only job available during the years 1971 and 1972 being the Bechtel project in Russellville, Arkansas. Petitioner returned to Sapulpa in December 1971 and remained there approximately 22 days during the holiday season. Once again petitioner contacted the Muskogee local but was unable to find work closer to his Sapulpa home. He returned to Russellville, Arkansas in mid-January 1972, paid his union assessment to the Hot Springs local and went back to work for Bechtel. Bechtel had a policy of discharging employees after three days absenteeism if the supervisor so instructed and there was no reasonable cause to retain the employee. No termination notice was issued to petitioner because of his extended absence in December 1971. Rather, he continued to be employed as a pipefitter upon his return; however, he worked outside with "instrumentation" whereas before he worked in "process." For the taxable year 1972 petitioner estimated his daily costs to be $11. The $1 increase over 1971 costs was attributable to increased grocery prices. The average expense incurred in the Russellville, Hot Springs, Sapulpa area during *258 the taxable years involved herein by persons similarly employed was $13. During 1972 petitioner again made weekend trips to Sapulpa and in addition returned there for an undertermined Thanksgiving vacation in November 1972. Petitioner was injured in an automobile accident on December 6, 1972, after which he was unable to continue to work at the Bechtel site. It is Bechtel's customary business practice to prepare a termination notice for all employees whether termination is voluntary or involuntary. The only such notice appearing in petitioner's file is dated December 19, 1972. The Commissioner, in his statutory notice of deficiency, determined that petitioners' deductions for automobile expenses, meals and lodging for the taxable years 1971 and 1972 were nondeductible personal expenses. He further determined that petitioners' deduction in each of the taxable years 1971 and 1972 for telephone expenses was not deductible because petitioner had not established that they were ordinary and necessary business expenses. In addition, petitioners' interest deduction in excess of $1,047.02 for the taxable year 1972 was disallowed because it had not been established to be interest. *259 OPINION Section 262(a) denies a deduction for one's personal living expenses. However, to mitigate the burden of a taxpayer who, by reason of the "exigencies of business" incurs additional and duplicate living expenses, section 162(a)(2) [2] provides a deduction for reasonable and necessary travel expenses including meals and lodging, incurred while away from home in pursuit of a trade or business. Respondent does not contend that petitioner was not in pursuit of his trade or business, but rather asserts that he was not away from home within the meaning of the statute. For purposes of the statute home is not necessarily where the heart is, but rather the location of the taxpayer's principal place of employment. See *260 . . When a taxpayer maintains a personal residence in one location and accepts or is assigned temporary employment in another which can be expected to last for a short and reasonably definite period of time a deduction is allowed for the living expenses incurred at the temporary job site. . The rationale is clear, when employment is temporary as contrasted with indefinite or indeterminate some otherwise personal expenses associated with that employment may be said to arise from business and not the taxpayer's choice to continue to maintain a residence some distance from his place of work. .This exception is only intended to operate in those circumstances where the duration of the job is such as to make it unreasonable to require a taxpayer to uproot and move his family. At the time petitioner was employed by Bechtel the estimated completion date of the nuclear power plant project where he was to work was sometime in 1975. While no evidence *261 was produced to suggest that persons possessing petitioner's particular skill would be required for that period of time, from the very nature of petitioner's craft and the project involved we are left with the impression that a period of several years could reasonably be expected. Indeed, petitioner was employed in Russellville from January 18, 1971 through December 19, 1972. While petitioner seems to contend that he was in fact employed on two separate and distinct jobs each lasting for less than one year from the record, we can only conclude that petitioner's absence from the job in December 1971 was nothing more than a holiday vacation and that he intended to return to Bechtel if he could not find work closer to Sapulpa during that vacation. There is no evidence to support his contention other than petitioner's statement that he thought that after three days absenteeism he would automatically be discharged. In fact Bechtel's policy was to discharge employees only upon the recommendation of a supervisor. Moreover, a termination notice is prepared for all employees whether termination is voluntary or involuntary and none was prepared for petitioner in December 1971. Even viewing *262 the facts as petitioner suggests does not belie the conclusion that his employment was of indefinite duration.The job was substantial and would take a period of years to complete and Bechtel rehired employees discharged for absenteeism and petitioner was cognizant that work would continue to exist in Russellville. See . Moreover, he continuously attempted to find work closer to Sapulpa, but was unable to do so and throughout the period in question the only work available to petitioner was the Bechtel job in Russellville. While petitioner may have intended to return to Sapulpa as soon as work was available, there was no indication when that might occur and together with the fact of his return to Bechtel in January 1972 only confirms the indefinite nature of his stay in Russellville. In addition, from the evidence we can only conclude that petitioner had no substantial business connection with the Sapulpa area. Petitioner was employed in Russellville for nearly two years and given the bleakness of the Sapulpa job market there is every reason to believe that but for his automobile injury the period would have been even *263 longer. Moreover, in April 1971 petitioner purchased a house trailer in Russellville which in the context of this case indicates that something more than temporary employment was expected. No evidence was produced that it would have been particularly costly to move his family. Although petitioner testified that he expected that the Russellville job would be only temporary, this subjective evidence when juxtaposed with the objective facts presented herein is clearly insufficient to carry his burden of proof. We can only conclude that petitioner's employment was for an indefinite period and that he chose to maintain his family residence in Sapulpa while he was employed in Russellville for personal reasons. [3] Accordingly, we hold that his additional travel and living expenses were not incurred while away from home within the meaning of section 162(a)(2) and are therefore not deductible. *264 Respondent disallowed a deduction in each of the taxable years 1971 and 1972 for "telephone expenses" in the respective amounts of $75 and $80. The only evidence produced was petitioner's rather vague and inconclusive statement that he made phone calls. Petitioner has failed to rebut the presumption of correctness which attaches to the Commissioner's determination and therefore no deduction can be allowed. . Finally, petitioner deducted in the taxable year 1972 $1,552.43 as interest. Respondent disallowed that deduction to the extent that it exceeded $1,047.02. The dispute revolves around the interest portion of the monthly payment which petitioner made on the house trailer which he purchased in April 1971. In this regard, petitioner introduced into evidence the financing agreement and testified that he paid each monthly installment as due. The interest on the installment contract, together with other interest substantiated does not exceed the interest allowed by the Commissioner in his statutory notice of deficiency. Petitioner failed to come forward with any evidence to support an interest deduction in an amount greater *265 than that allowed by respondent. Accordingly, the determination of the Commissioner must be sustained. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
3. Compare , wherein the taxpayer maintained substantial contacts with his putative tax home and was subject to termination at the distant place of employment at any time without notice.↩